```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

DAVID SINGLETON,

              Petitioner,

  -vs-                                **No. 10-CV-6505 (MAT)**
                                              **DECISION AND ORDER**

JAMES T. CONWAY, Superintendent,
Attica C.F.,

              Respondent.

## I. Introduction

David Singleton ("Singleton" or "Petitioner") has filed a pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on the basis that he is being held in state custody in violation of his federal constitutional rights. Petitioner's detention is the result of a judgment of conviction entered on August 5, 2005, in the Monroe County Court of New York State Supreme Court, following a jury trial, of first degree robbery (N.Y. Penal Law § 160.15(4)) and first degree burglary (N.Y. Penal Law § 140.30(4)). Petitioner is presently serving his sentence at the Attica Correctional Facility.

## II. Factual Background and Procedural History

On June 25, 2004, Dinesh Patel ("Mr. Patel"), an Indian immigrant, worked as a desk clerk at the 490 Motel in Rochester with his wife, Jagruti Patel ("Mrs. Patel"), also an Indian immigrant. The Patels and their four-month old child lived in an apartment adjoining the office at the motel. At approximately

-1-

6:00 p.m., the Patels were preparing dinner when three black men arrived in the motel parking lot in a black car. All three men wore white hospital gloves. Petitioner, who was the driver, got out of the car, entered the motel office and asked Mr. Patel about the price of a room.

While Mr. Patel was talking to Petitioner, one of the accomplices, who was tall and heavy, used a metal bar to break through the door of the Patels' apartment.  The other accomplice, who was shorter and thinner, held a handgun.

A passing motorist saw the heavy man beat against the door and then enter the motel with the thin man. The motorist called 911 on his cell phone to report the break-in and the police were dispatched to the motel.

The heavy man grabbed Mr. Patel by the back of the collar, took him into the kitchen of his apartment, and ordered him to drop to the floor. Meanwhile, Mrs. Patel had been knocked to the floor when the heavy man forced open the apartment door; the thin man stood over her with a gun to her head.

Meanwhile, Linda Vereen ("Vereen"), the motel's live-in housekeeper, was in her room and heard a banging noise from the office. She thought that someone was trying the get candy from the candy machine, disregarded the noise, and turned on her TV.

Petitioner emptied the cash register, handed the money to the heavy man, and announced that this was not enough money. The heavy

man then took Mr. Patel from the kitchen back to the office and demanded more money. When Mr. Patel denied having any more money, the heavy man threatened to kill his wife unless they received additional money. As the heavy man said this, the thin man held a gun to Mrs. Patel's head. Mr. Patel opened the bedroom closet and surrendered a bag inside which contained $3,000.

The assailants then bound the Patels with duct tape, placed them in the bathroom, and told them that if they came out, they would be killed. Petitioner pulled the cables out of the cable box in the office.

When the cable TV went out, Vereen walked into the office where she encountered Petitioner, who told her that if she stayed where she was and did not speak, she would not get hurt. Glancing through the window, Petitioner saw the police arriving. He yelled through the office's customer window, "Hurry up, the police are coming, let's go." As Petitioner left the office, he told Vereen, "Stay where you are and don't follow me." Petitioner walked outside, pulled off the one white glove he was wearing, put the glove in his pocket, got into the driver's seat of his car, put the car in reverse without putting on his seat belt, and began to pull out of the parking lot.

Less than a minute later, Vereen went outside and pointed out Petitioner to the arriving officers. The Patels, still bound with duct tape, emerged from their apartment just as the police were

apprehending Petitioner. The Patels identified Petitioner soon thereafter in separate show-up identification procedures conducted at the motel.

The police did not find Petitioner's accomplices despite conducting a canine search of the vicinity. Although the police found white latex gloves in Petitioner's pocket at the time of his arrest, they did not voucher those gloves as evidence immediately and Petitioner apparently was able to dispose of them in the bathroom at the police station.

Petitioner was convicted as charged in the indictment and sentenced, as a second felony offender, to concurrent prison terms of 20 years, followed by five years of post-release supervision.

On February 11, 2009, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction. People v. Singleton, 59 A.D.3d 1131 (App. Div. 4th Dept. 2009). The New York Court of Appeals denied leave to appeal and leave for consideration. People v. Singleton, 12 N.Y.3d 859, reconsideration denied, 13 N.Y.3d 800 (N.Y. 2009).

After Petitioner completed his post-conviction proceedings in state court, he timely filed the instant petition alleging that (1) he was deprived of due process because the first two interpreters at trial were incompetent (2) the indictment was defective due to an interpreter's inadequate translation of grand jury testimony; (3) the evidence at trial was legally insufficient;

(4) the conviction was against the weight of the evidence; and (5) the police did not have probable cause for his arrest.

For the reasons that follow, the petition is dismissed.

### III. Analysis of the Petition

#### A.   Inadequacy of the Courtroom Interpreters

Because Mr. Patel spoke only some English and Mrs. Patel spoke virtually no English, they testified through an interpreter who understood Gujarati, the Hindi dialect which was their native language. Petitioner argues that the trial court improperly refused to strike the portion of Mr. Patel's testimony that was given in his native language and erroneously translated by the first two court-appointed translators. The Appellate Division held that Petitioner's claim with respect to the first interpreter was unpreserved, and declined to review it. People v. Singleton, 59 A.D.3d at 1131 (citing N.Y. CRIM. PROC. LAW § 470.05(2)). With regard to the second interpreter, the Appellate Division held that any errors by this interpreter were corrected either through defense counsel's objections or cross-examination of the witnesses with the assistance of two other interpreters, the competence of whom defense counsel did not question. Therefore, the Appellate Division determined, Petitioner failed to establish prejudice. Id.

Respondent argues that the claim regarding the first interpreter is procedurally defaulted based upon the Appellate Division's reliance upon an adequate and independent state ground

for dismissal. Respondent's argument regarding the procedural default appears to have merit. However, because resolution of the procedural default issue would be more time-consuming than disposing of the claims concerning both interpreters on substantive grounds, the Court, in the interest of judicial economy, proceeds to the claims' merits.

The Supreme Court has never decided what degree of interpretive assistance is constitutionally required for non-English speaking defendants. See United States v. Desist, 384 F.2d 889, 901 (2d Cir. 1967) (noting lack of Supreme Court precedent); see also United States v. Johnson, 248 F.3d 655, 663 (7th Cir. 2001) (noting that the Supreme Court has not even specifically found a constitutional right to any interpreter at all). The Second Circuit, however, has held that a non-English speaking defendant has a constitutional right to an interpreter. United States ex rel. Negron v. N.Y., 434 F.2d 386, 387 (2d Cir. 1970); see also United States v. Lim, 794 F.2d 469, 470 (9th Cir. 1986) (holding that "a defendant whose fluency in English is so impaired that it interferes with his right to confrontation or his capacity, as a witness, to understand or respond to questions has a constitutional right to an interpreter") (citations omitted).

In Negron, the Second Circuit explained that "[i]t is axiomatic that the Sixth Amendment's guarantee of a right to be confronted with adverse witnesses . . . includes the right to

cross-examine those witnesses as an 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.'" Id. at 389 (citations omitted). The Second Circuit further held that the failure to provide an interpreter to a criminal defendant constitutes a denial of the defendant's right to be present at trial. 434 F.2d at 389-90.

Because the interpreters' deficiencies affected the witnesses' ability to give comprehensible testimony rather than Singleton's understanding what was occurring at trial, this claim implicates the Sixth Amendment's right of confrontation and cross-examination rather than Singleton's right to be present at his own trial. Confrontation clause errors are subject to harmless error review. Perkins v. Herbert, 596 F.3d 161, 176-77 (2d Cir. 2010). The Supreme Court has determined that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the [Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)] standard . . . , whether or not the state appellate court recognized the error and reviewed it for harmlessness under [Chapman v. California, 386 U.S. 18, 24 (1967)]." Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (citations omitted). In Fry, the Supreme Court commented, "[I]t certainly makes no sense to require formal application of both tests [(i.e.,

Chapman and Brecht)[1]] when the latter obviously subsumes the former." Id. at 120. Accord Wood v. Ercole, 644 F.3d 83, 93-94 (2d Cir. 2011).

In the present case, the first two court-appointed interpreters at Singleton's trial were plainly incompetent. It is somewhat surprising that the judge permitted them to continue for as long as they did. Nevertheless, the trial court finally relieved both interpreters of their duties after numerous objections by defense counsel. In the interim, the prosecutor had succeeded in locating two qualified Gurjarati-speaking interpreters in New York City who translated the remainder of the proceedings via speakerphone. Notably, there were no objections either by defense counsel or the prosecutor to the interpretive services provided by the two new interpreters. Under these circumstances, the Court cannot find that the errors committed by the first two interpreters had a "substantial and injurious effect" on the jury's determination. Accordingly, the errors were harmless under Brecht and Singleton cannot demonstrate that his constitutional rights were prejudiced. See Pham v. Beaver, 445 F. Supp.2d 252, 258(W.D.N.Y. 2006) ("In the end, the more qualified translator took

---

[1] Brecht permits federal courts to overturn a state conviction only when the constitutional violation "had substantial and injurious effect or influence in determining the jury's verdict." 506 U.S. at 637 (internal quotation marks omitted). "The Brecht standard incorporates the interests of 'finality . . . comity and federalism' applicable to habeas review and is therefore 'less onerous' than the Chapman "harmless beyond a reasonable doubt" standard applied on direct review of a criminal conviction." Wood, 644 F.3d at 93 (quoting Brecht, 507 U.S. at 635-37; ellipsis in Wood).

over the role of interpreting the witnesses' testimony for the benefit the jury, the court, and the attorneys. Thus, the Court cannot see how Pham suffered constitutional prejudice as a result. Habeas relief will not issue on this claim.")

**B.    Translation Errors in the Grand Jury Proceeding**

Petitioner contends that the indictment was defective due to the interpreter's inadequate translation of testimony in the grand jury.  This issue is not cognizable on habeas review.

A jury conviction transforms any defect connected with the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt. See, e.g., United States v. Mechanik, 475 U.S. 66, 68  (1986) ("The petit jury's verdict of guilty beyond a reasonable doubt demonstrates a fortiori that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [federal grand jury] rule violation."); accord, e.g., United States v. Lombardozzi, 491 F.3d 61, 80 (2d Cir.2007) ("It is well settled that a guilty verdict at trial 'remedies any possible defects in the grand jury indictment.'") (quotation omitted).

In Lopez v. Riley, a 28 U.S.C. § 2254 habeas proceeding, the Second Circuit relied on Mechanik in order to hold that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a

state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court." 865 F.2d 30, 32 (2d Cir.1989); see also, e.g., Davis v. Mantello, 42 Fed. App'x 488, 490-91(2d Cir. 2002) ("[C]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court.") (citing cases), cert. denied, 538 U.S. 986 (2003). This claim accordingly is dismissed as not cognizable.

**C.   Legally Insufficient Evidence Supporting the Verdict**

A habeas petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. Einaugler v. Supreme Court of the State of N.Y., 109 F.3d 836, 840 (2d Cir. 1997). A state conviction must stand if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."" Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

Even when "faced with a record of historical facts that supports conflicting inferences, [the habeas court] must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994). Relief on a sufficiency claim cannot be granted unless the record is "so totally devoid of evidentiary

support that a due process issue is raised." Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994).

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999). In this case, to establish Petitioner's guilt of first-degree robbery under N.Y. PENAL LAW § 160.15(4), the prosecution had to establish that Petitioner, acting in concert with others,[2] forcibly stole property and, during the commission of the crime, he or his accomplices displayed a firearm. In order to prove first degree-burglary under N.Y. PENAL LAW § 140.30(4), the prosecution bore the burden of establishing that Petitioner, acting in concert with others, "knowingly enter[ed] or remain[ed] unlawfully in a dwelling with intent to commit a crime therein" and while in that dwelling, he or his accomplices displayed a firearm.

The evidence, when viewed in the light most favorable to the prosecution, established all of the elements of the two crimes of which Petitioner was convicted. First, the prosecution's proof amply showed that Petitioner, acting in concert with two accomplices, entered the motel where the Patels worked and lived; emptied out the cash register in the motel office; broke into the Patels' private apartment; bound the Patels' hands with duct tape;

---

[2] The trial court instructed the jury on the law of acting in concert, see N.Y. PENAL LAW § 20.00, in connection with both charges.

held a gun to Mrs. Patel's head and threatened to kill her unless they received more money; and forcibly took, without permission, a bag containing $3,000 from the Patels' bedroom closet; placed both victims in the bathroom; and told them that if they did not remain there, they would be killed. Petitioner and his accomplices also threatened to kill the motel's housekeeper who happened upon them during the course of the break-in.

This evidence is more than legally sufficient to prove Petitioner and his accomplices "forcibly st[ole]" money from the Patels at gunpoint and thereby committed first degree robbery under N.Y. PENAL LAW § 160.15(4). The evidence was also more than legally sufficient to establish that Petitioner and his accomplices "knowingly enter[ed] or remain[ed] unlawfully" in the Patels' motel, with the intent to forcibly steal money while displaying a firearm, and thereby committed first degree burglary under N.Y. PENAL LAW.

Petitioner claims that the evidence is insufficient because of alleged "contradictions" in the testimony of the arresting officer, Investigator Pero. According to Petitioner, Investigator Fero's trial testimony was inconsistent with his grand jury testimony on the issue of which officer drew a weapon when apprehending Petitioner. A habeas petitioner's contention that a witness' testimony was unworthy of belief is not reviewable in habeas proceedings since credibility determinations are the province of

the jury. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues). Even if Investigator Fero did testify inconsistently about the collateral issue of which officer had a gun during Petitioner's arrest, that does not provide a basis for challenging the sufficiency of the evidence. See, e.g., Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981) (in rejecting insufficiency claim, noting that jury was entitled to believe prosecution witnesses despite inconsistencies in their testimony).

Petitioner also claims that the evidence was legally insufficient because there was no in-court identification of him by the Patels. Even without an in-court identification of Singleton, however, the prosecution submitted proof establishing an uninterrupted chain of events placing Singleton at the break-in and robbery of the Patels at gunpoint. The jury rationally was entitled to rely on this evidence to infer Singleton's identity as one of the robbers. See Simmons v. McGinnis, No. 04 Civ. 6150 PACDF, 2006 WL 3746739, at *10 (S.D.N.Y. Dec. 19, 2006) ("Even without direct eyewitness testimony, this evidence-placing Petitioner near the scene of the crime, in the company of the other robber, and further placing Petitioner in the two locations where proceeds of the crime were recovered by the police-would be sufficient to support the

verdict.") (citing, <u>inter alia</u>, <u>United States v. Kwong</u>, 14 F.3d 189, 193 (2d Cir.1994) (noting that "identity can be inferred through circumstantial evidence"); <u>Lawrence v. Hoke</u>, No. 87 Civ. 7413 (KTD), 1990 WL 160677, *6 (S.D.N.Y. Oct. 16, 1990) "[I]t is clear that Lawrence was at the scene of the crime during the time that the crime was being committed, that he accompanied the other perpetrators, carried a shotgun, accosted certain individuals, threatened their lives and safety, and shot one or both . . . guards. This determination was not improper even though no direct evidence was adduced at trial that Lawrence carried the bag with the medicine vial and, that upon fleeing, inadvertently left it at the crime scene.") (citing <u>Mallette v. Scully</u>, 752 F.2d 26, 32 (2d Cir.1988) (direct evidence of crime, although preferable, is not required to support conviction; circumstantial evidence is legally sufficient).

    **D.**    **Verdict Against the Weight of the Evidence**

Singleton's claim regarding the weight of the evidence is a pure state law claim grounded in the criminal procedure statute while a legal sufficiency claim is based on federal due process principles. <u>People v. Bleakley</u>, 69 N.Y.2d 490, 495 (N.Y. 1987). Because Singleton's weight of the evidence claim implicates only state law, it is not cognizable in this federal habeas proceeding. <u>See</u> 28 U.S.C. § 2254(a); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)

(habeas corpus review is not available where there is simply an alleged error of state law).

Therefore, it is dismissed as not cognizable. <u>Accord</u>, <u>e.g.</u>, <u>Ex parte Craig</u>, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), <u>aff'd</u>, 263 U.S. 255 (1923); <u>Garrett v. Perlman</u>, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (dismissing claim that conviction was against the weight of the evidence; such a claim is not a basis for habeas relief but presents only an error of state law, for which habeas review is not available).

**E.   Absence of Probable Cause for Arrest**

Petitioner claims that his arrest violated the Fourth Amendment's proscription against unreasonable searches and seizures. After an evidentiary hearing, the suppression court held that based on the police dispatch, the officer's observations as they arrived at the motel, and the motel employee's actions in pointing out Petitioner as he was attempting to leave the area, "the seizure of [Petitioner] constituted a valid, investigative detention that was supported by reasonable suspicion." Respondent's Exhibit A at 2. The claim was raised and briefed on direct appeal, where it was denied by the appellate court.

Petitioner's Fourth Amendment claim does not state a claim for habeas relief because he had a full and fair opportunity to litigate the basis for his arrest before the state courts. The law

is well-settled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a contention that evidence recovered through an illegal search or seizure was introduced at trial. Stone v. Powell, 428 U.S. 465, 482 (1976) (emphasis supplied); accord, e.g., Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir. 2002); Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

The Stone v. Powell doctrine applies to all Fourth Amendment claims, including illegal arrests, and applies regardless of the nature of the evidence sought to be suppressed, be it physical or identification evidence. E.g., Cardwell v. Taylor, 461 U.S. 571, 572-73 (1983) (per curiam); Chavis v. Henderson, 638 F.2d 534, 538 (2d Cir. 1980) (holding that the Stone v. Powell doctrine bars habeas review of a claim that the identification evidence obtained following an arrest without probable cause should have been excluded, absent a showing that petitioner was denied a full and fair opportunity to litigate the claim in state court).

Here, Petitioner utilized New York's procedure for litigating Fourth Amendment claims, embodied in New York's Criminal Procedure Law §§ 710.20 to 710.70. He was granted a suppression hearing and then appealed the suppression court's unfavorable decision on direct appeal. Thus, Petitioner clearly received a full and fair opportunity to litigate his claim concerning his arrest in the

state courts, and Stone v. Powell bars further consideration of the claim by this Court.

**IV. Conclusion**

For the reasons discussed above, David Singleton's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, not certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(2). The Court further certifies that any appeal from this order would not be taken in good faith. See 28 U.S.C. § 1915(a).

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:    November 1, 2011
          Rochester, New York